### NESBITT v. MOORE.

1. CONVERSION—MEASURE OF DAMAGES.—To secure advances made by defendant to one T., plaintiff deposited with defendant a chattel mortgage given to plaintiff by T. Defendant collected his debt out of the mortgaged goods, and then surrendered the mortgage to T., who destroyed it. *Held*, that the measure of plaintiff's damage was the value of the mortgage at the time of its surrender by defendant.

Before ALDRICH, J., Greenville, November, 1892.

This was an action by Niles Nesbitt against H. P. Moore and W. C. Moore, partners as H. P. Moore & Co., commenced in a trial justice's court on June 28, 1892. W. C. Moore testified that he was not a partner of H. P. Moore, and that "H. P. Moore & Co. advanced to Henry Todd, in the spring of the year 1891, supplies to the amount of $20.40, it having been agreed between Moore & Co. and Nesbitt that we might advance an amount additional to the fifteen dollars first advanced upon the written order of Nesbitt, and that the mortgage of Henry Todd to Nesbitt was to be security to the full amount thus advanced. We took additional papers on Todd to cover it, holding the Nesbitt mortgage as collateral."

*Messrs. Haynsworth & Parker*, for appellant.

*Mr. J. R. Bellinger*, contra.

June 26, 1893. The opinion of the court was delivered by MR. JUSTICE MCGOWAN. This action was instituted in the

trial justice court, before F. B. McBee, Esq. The complaint, after allegation of copartnership of defendants (which turned out to be a mistake), alleged: "That the plaintiff did, on the 7th day of April, 1891, at Greers, in the County of Greenville, deposit with the defendants, as collateral security, for advances made by you to one Henry Todd, a certain chattel mortgage executed and delivered by the said Henry Todd to said Niles Nesbitt, for thirty-one and 50-100 dollars, dated January 1st, 1891, and due October 1st of the same year, and that afterwards the said Henry Todd paid to you the amount of said advances, and thereupon you delivered the said mortgage to the said Henry Todd, regardless of the rights of the said Niles Nesbitt, and thus enabled the said Henry Todd to destroy the said mortgage and dispose of the property covered thereby. The plaintiff has been damaged in the sum of thirty-five dollars, which defendants refuse to pay or deliver said mortgage to plaintiff upon demand therefor," &c. The answer of the defendant was, first, a general denial, and, second, a counterclaim to the effect that plaintiff was indebted to H. P. Moore & Co. (composed of H. P. Moore alone) in the sum of six dollars, for two sacks of corn sold to plaintiff in June, 1891.

The case was heard without a jury by the trial justice, who took the testimony, which is all printed in the record, the important parts of which are as follows: "Greers, S. C., April 7, 1891. This is to certify that we hold as collateral a mortgage, Henry Todd to N. Nesbitt, for $31.50, dated January 1st, due October 1, 1891. Amount advanced $15. (Signed) H. P. Moore & Co."

Niles Nesbitt testified: "That he had never seen the mortgage referred to in the receipt since it was turned over to Moore & Co., though he had demanded it a number of times. Does not know what has become of it, except that H. P. Moore told him that he had given it to F. H. Edwards, and that he had been damaged to the amount of the mortgage, which is $31.50, with interest since January 1, 1891, at eight per cent. The mortgage covered one horse, two hogs, homestead effects, and the crop of 1891 on the Crotwell place."

H. P. Moore testified: "I alone compose the firm of H. P.

Moore & Co.   I made advancements in the year 1891 to Henry Todd, amounting to twenty dollars and forty cents.   I also sold Nesbitt two sacks of corn, worth six dollars.   Some time in the fall of 1891 I received a letter from Nesbitt appointing me his agent to collect the Todd debt.   At that time Henry Todd had paid me nothing on that debt.   I put the papers in the hands of F. H. Edwards for collection, and our debt against Todd was paid through Edwards.''

F. H. Edwards testified as follows: "I acted as agent for H. P. Moore & Co.   The paper given by Henry Todd to Nesbitt, assigned to H. P. Moore & Co., was given me for collection. The mortgage given by Todd to Nesbitt covered a horse and the crop of 1891.   I sent to Henry Todd's house, but could not find the horse.   [He was dead.]   The crop was not gathered, but Todd ageeed to gather it and turn the crop over to Moore & Co.   I watched the crop, and as it was gathered it was turned over to me, and I turned over the proceeds to H. P. Moore & Co.   I levied on everything which was covered by the mortgage, and took everything which could be applied to the debt.   When Todd had finished gathering the crop, I gave him the mortgage, being satisfied I had gotten everything which could be made out of him, or which the mortgage covered.   The cotton taken to Moore was all that Todd had, so far as I knew.   I did see a little shoat, weighing about fifty pounds, and worth about $2.50,'' &c.

Henry Todd said: "I gave a mortgage to Nesbitt, which covered a horse and the crop of 1891, and he said nothing about any thing else.   I paid my debts with all I made last year. Edwards levied on everything I had.   The horse died in June, 1891.   I owed Moore & Co. $20.40, and it took every thing I had to pay him.   I gave up every thing I had, and I have no other property.   Moore's clerk told me to go to Edwards for the papers.   I went to Edwards for my papers and he gave them to me, and I burned them up.   I have never paid the Nesbitt debt, for I have nothing to pay it with,'' &c.

The trial justice gave judgment for the plaintiff for $29.70 against the defendant, H. P. Moore, saying in the report of the case only this: "In making up my judgment I allowed the

plaintiff the amount of the note and mortgage, with interest on the same from January 1, 1889, at eight per cent. per annum, deducting therefrom six dollars due the defendant by the plaintiff, and which was admitted by him, and which I have allowed." He gave no other reason for his judgment. From this judgment the defendant appealed to the Circuit Court; and Judge Aldrich, after argument, made the following order: "On hearing the appeal in this case, it is ordered, that the exceptions be and are hereby overruled, and the appeal dismissed, and that the judgment of the trial justice be affirmed."

The defendant now appeals to this court upon the following exceptions: "I. That the presiding judge erred in not holding as a matter of law, that no damages had been proved as a result to plaintiff of the delivery of the mortgage in question to Henry Todd: (1) Because the evidence was clear and uncontradicted that the mortgage had been fully exhausted before delivery as to all articles upon which it was a lien. (2) Because the said Henry Todd was at the time of delivery and at the time of trial utterly insolvent, and that the note and mortgage were of no value at such times. (3) Because the said Henry Todd admitted his indebtedness upon said note and mortgage, and the delivery thereof was neither intended nor operated as a release. II. That his honor erred in not holding that even though the plaintiff were damaged by the delivery to Todd of the note and mortgage in controversy, that such damage could not exceed the amount of the mortgage, less the amount collected of said Todd thereon, viz: $20.40, and less plaintiff's counter-claim of $6. III. That his honor erred in not holding that no damage had been proved to plaintiff in consequence of said delivery, there being proved no value for any articles claimed to have been included in said mortgage, and not seized thereunder, even though it be admitted that such articles were subject to said mortgage," &c.

The amount in this case is not large, but there is an important principle involved. Neither the trial justice who heard the case nor the Circuit Judge stated the grounds of the judgment, and, therefore, we will not undertake to go into the details, which might be improper, in view of the fact that the

case will have to go back to the circuit for a new trial. We think, however, that under the facts as shown, there was error of law, in holding and ruling that the true measure of damages, in such a case as this, was the face value of the note and mortgage, with interest from the date; that is to say, there was error of law in the principle applied. The elementary writers give the following as the definition of the term *damage:* "A sum of money adjudged to be paid by one person to another as compensation for a loss sustained by the latter in consequence of an injury committed by the former." Now assuming that there was an injury inflicted upon the plaintiff by the defendant or his agent, in yielding up the chattel mortgage to Todd, after he had applied the crop (the horse was dead) covered by the Nesbitt mortgage to the payment of the Moore advances, *what loss did the plaintiff sustain thereby? Not* certainly the original face value of the mortgage, but *its value* at the time of conversion. "The general rule of damages for the conversion of stock by the pledgee, is the value of the stock at the time of the conversion, with interest from that time to the time of trial, together with whatever incidental damage may have occurred." See 18 Am. & Eng. Enc. Law, 715, and notes.

What was the value of the chattel mortgage at the time it was surrendered by the agent of the defendant? It is quite clear that it was worth less at that time than its face value. By pledging it as collateral security for the advances by Moore, the plaintiff himself had disposed of so much of the mortgaged property as might be necessary to secure the advances. It turned out that (the horse being dead) it required the entire crop of Todd mortgaged to Nesbitt to be taken out of the mortgage to pay the advances, $20.40, and this being the act of the plaintiff, to that extent he certainly has no cause of complaint of Moore. It is not quite accurate to say that Todd paid the advances to the relief of the collateral security, for the truth is, that the money which paid the advances was taken out of the mortgage as collateral security. By accepting the pledge of the mortgage as collateral security for the advances, the defendant did not guarantee either the solvency of Todd

or the worth of the mortgage, but accepted the pledge as security, with an implied obligation that, after its use as allowed, he would return it; that obligation was broken, and the loss to plaintiff was the value of the paper at the time of that breach, the conversion.

The judgment of the court is, that the judgment of the Circuit Court be reversed, and the case remanded to the Circuit Court, that a new trial may be ordered in accordance with the conclusions herein announced.